**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHICHESTER SCHOOL DISTRICT** <br> *Plaintiff,* <br><br> vs. <br><br> **UPPER CHICHESTER TOWNSHIP,** <br> **BETH H. ZENUCK, THOMAS E. FERRO, RUSSELL B. MINNER, JAMES R. STUART, JOSEPH A. DEMARCO,** in their individual and official capacities as Commissioners of Upper Chichester Township, <br> **DAVID L. HOLLAND,** in his individual and official capacity as Fire Marshal of Upper Chichester Township, and <br> **MARK A. BOSTWICK,** in his individual and official capacity as Building Inspector of Upper Chichester Township, and **Charles Remaley**, Inspector for Upper Chichester Township <br> *Defendants.* | `§ <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | **Civil Action** <br><br> **No.** |

**COMPLAINT**

I.    **Nature of the Action**

1.    This is a federal question action arising under 42 U.S.C. § 1983, with supplemental jurisdiction of claims under state law. The gravamen of the action is that Defendants, acting under color of state law on behalf of the Upper Chichester Township ("UCT"), Delaware County, Pennsylvania, are interfering with and depriving Plaintiff, Chichester School District ("the School District" or "Chichester"), of its constitutionally protected property rights in the improvement and use of the Chichester High School ("CHS") in Delaware County, Pennsylvania.

2.      Chichester recently undertook a substantial renovation project of CHS. As required by Pennsylvania law and local ordinances in Upper Chichester Township, the School District through the contractors obtained building permits from Upper Chichester Township for the proposed renovations and obtained approvals of its plans from the Pennsylvania Department of Labor and Industry ("L&I") as well as Township officials.

3.      The high school renovation project went out to bid on May 4, 2001.  Bids were received on June 6, 2001. The bids were awarded on June 13, 2001 with notices to proceed sent June 14, 2001. Contractors, including the window contractor, obtained permits on August 2, 2001 to comply with the 1993, as amended in 1996, BOCA code duly adopted by UCT.  The total project cost for the five (5) prime contractors is $7,211,150.00, $930,000.00 of which is to Almond Glass Works, Inc. for the window installation. A copy of Almond's permit is attached hereto as Exhibit "1."

4.      The plans that the School District submitted to and which were approved by L&I and UCT disclosed the type of windows that were being installed in connection with the renovation. At no time during the period in which the School District and its contractors applied for and received building permits and certificates of occupancy did either UCT or L&I send notice of objection to the proposed windows for the renovation.

5.      Subsequently, *after* the building permits were issued and approvals given, Defendant David L. Holland ("Holland"), the UCT Fire Marshal, and Mark

Bostwick ("Bostwick"), the building inspector, demanded that the School District install egress windows (i.e., windows of certain dimensions that can be opened to allow for escape in the event of a fire). Further, Holland wrote to the School District's window contractor on May 31, 2002, ordered it to "CEASE and DESIST" any further work on the windows or risk fines and penalties. A copy of the "CEASE and DESIST" letter is attached hereto a Exhibit "2". This directive came *after* the School District had already purchased and installed most of the windows that had been proposed, submitted and approved in the building permit application. The costs of removing the existing windows and/or installing the egress windows demanded by Defendants would be a substantial expense for the School District, in excess of $100,000, plus premiums as outside the bid.  The new proposal would delay school opening in the fall.

      6.    The egress windows Defendants demand are *not* required by the 1996 BOCA building code adopted by Upper Chichester, nor are such windows required under any local ordinance or rule in UCT.  The Defendant's demand that the School District install a window standard that is not required by controlling state or local building codes or ordinances constitutes an arbitrary, capricious and irrational behavior, an abuse of power that deprives the School District of its constitutional property and due process rights, in violation of 42 U.S.C. § 1983. The School District seeks injunctive relief, compensatory damages, and attorneys fees under 42 U.S.C. § 1988 for the §1983 violations.

7.    The Defendants also never specified the parameters of this egress window requirement, i.e., whether the windows should slide, whether the windows should be a hinged opening, if the windows should open in or out, the dimensions, etc. The Defendants have **verbally** instructed contrary versions at different times: once that the windows should open outward with the handle outside, an obvious security risk, and once that the windows should slide, which windows are known in the industry for track malfunctions and not to be used for escape purposes.

8.    Further, CHS is currently on schedule to complete the renovations by September 2002, for the start of the new school year. However, implementation of Defendants' demands with respect to the egress windows has already delayed construction, would result in a continued disruption of the contractor's schedules, excessive costs to the School District, substantial delay in completing the renovations, and ultimate delay in the opening of the school in September 2002.

9.    The School District is required by Section 1501 of the Pennsylvania Public School Code of 1949, 24 P.S. §15-1501, to open its schools for student instruction at least one-hundred and eighty days each year. A substantial delay in the opening of Chichester High School to accommodate the Defendants' unreasonable demands would constitute irreparable harm because the School District would be unable to comply with instructional mandates and would lose state and federal funding. Under separate cover, the School District is filing a motion for temporary restraining order and injunctive relief to enjoin Defendants from enforcing this

directive, so that the School District can open CHS on time and comply with Pennsylvania law.

10.    Last, while Plaintiff has appealed the Cease and Desist letter, the BOCA code at § requires an appeal board hearing, but Defendants have failed to appoint such a board, resulting in further process violations.

11.    Defendant Remaley is also a lecal building inspector and together with Hollad and Bostwick issue, contrary to longstanding pracitcie and custom, letters to the District and to School Board members who were unable to resolve these issues, as to the school board members' personal properties, warning and notice letters about perceived violations or requiring unnecessary inspections of other buildings in order to harass, intimidate and otherwise attempt to pressure the District into installing the ill-conceived and vague notions of a widow not required by code or written rule. The morning after the public vote at a regular board meeting this week to authorize the filing of this suit, 38 of the new and already installed windows at the high school were smashed both top and bottom with a hammer.  It is believed and therefore averred that said acts are to further pressure the District in deprivation of its constitutional rights.

B.    **The Parties.**

12.    Plaintiff Chichester School District is a political subdivision and school district of the third class duly organized and operating in the Commonwealth of

Pennsylvania, partly located in Upper Chichester Township, Delaware County. Plaintiff is a political sub-division within the meaning of Pa. R. Civ. Proc. 76.

13.    Defendant Upper Chichester Township is a municipality and township of the second class, of the Commonwealth of Pennsylvania, and is a political sub-division within the meaning of Pa. R. Civ. Proc. 76. Defendant UCT appointed and is to supervise and direct Defendants Holland, Bostwick and Remaley.

14.    Defendants Beth Zenuck, Thomas Ferro, James Stewart, Russell Minner and Joseph DiMarco are individuals and citizens of the Commonwealth of Pennsylvania and elected to and serve upon the Upper Chichester Board of Commissioners, responsible for the other individual Defendants and appointment of a BOCA appeal board.

15.    Defendant David L. Holland, in his capacity as Fire Marshal of Upper Chichester Township and in his individual capacity is a citizen and resident of Boothwyn in the Commonwealth of Pennsylvania.

16.    Defendant Mark A. Bostwick, in his capacity as building inspector of Upper Chichester Township and in his individual capacity is a citizen and also a resident of Boothwyn in the Commonwealth of Pennsylvania.

17.    Defendant Remaley is an individual and citizen of Pennsylvania and appointed as a building inspector for UCT.

C.     **Jurisdiction and Venue**

18.     This Court has federal question jurisdiction, 28 U.S.C. § 1331, over the

School District's claims under 42 U.S.C. § 1983, and supplemental jurisdiction, 28

U.S.C. § 1367, over the School District's state law claims.

19.     Venue is proper in this Court under 28 U.S.C. § 1391(a)(2) because a

substantial part of the events giving rise to the claim occurred in this district.

D.     **The Facts**

20.     As part of its facilities, the Plaintiff owns and maintains a high school

which began renovation in the Spring of 2001.  Between 1998 and 2000, the

Chichester School District proceeded through the Plan Con building process as

established and required by the Pennsylvania Department of Education, State

Department of Labor and Industry and the pertinent local and Commonwealth

regulatory agencies.  The high school construction/renovation has been taking place

over the course of the Spring and Summer of 2001 and 2002 as well as during the

school year after school hours, as necessary. The project is a two-year project due to

complete by September 2002.

21.     The Chichester High School is located in Upper Chichester Township,

Delaware County, Pennsylvania. As with any public school, the specifications for the

school must be submitted to and approved by the Commonwealth of Pennsylvania

and the Department of Education. Approvals by PDE, the Commonwealth

Department of Labor & Industry as well as the local township were issued before bid in 2001.

22.    The High School plans were submitted to the Township and approved by various code officials and inspectors on or before May 2001 and affirmed by building permits issued in August 2001.

23.    The parameters to the project include replacement and/or installation of various essential systems including asbestos abatement, electrical improvements, fire systems, plumbing replacement, disability revisions, HVAC installation, as well as appearance improvements and additions. One of the many items forming part of the renovation is window replacement.

24.    The Chichester High School was designed and built in approximately 1967. As constructed, the Chichester High School is a combination of one (1) and two (2) floors with several wings of classrooms and associated student use areas.   A true and correct copy of the diagram of the Chichester High School is attached as Exhibit "3".

25.    There have been no substantial renovations since initial construction. The original design of the School, like most schools designed in that era,  used slider windows in tracks on the exterior of the building in most of the classrooms.[1]

26.    For the 2001 renovation, the District's Architect Brian Ambruster chose standard "hopper-type" windows, common to most current Pennsylvania school

---

[1]Slider windows are not used nor known in the industry for escape purposes due to the risk of track and window failure.

designs ("the Ambruster window"). The Ambruster window is approximately four feet high and four feet one and a half inches wide, with a horizontal break approximately 24" from the base and hinged at the base.

27.    The lower hinged area forms an opening for movement inward, but the opening is  different in dimensions from that now being demanded by Defendants. The Ambruster window is designed to open for air but without allowing physical intrusion for security reasons. The glass is breakable with about one hundred (100) pounds of pressure in an emergency, i.e. a fire axe.

28.    In or around March 2001, various individuals from and hired by the School District as well as others from the Township met to discuss the building plans and drawings which were to be sent out for public bid. During that meeting, one of the Defendants mentioned he would want all new windows for the High School to open "somehow" as do the sliding windows originally installed.

29.    It was pointed out to that official by both the representatives of the District, the Architect and Engineer specializing in school construction and responsible for this project as well as other code officials for the Township that egress windows are not a requirement under the Township mandates and adopted codes nor is there such a requirement in any state or national code.

30.    Upper Chichester Township enacted and approved BOCA, 1993 edition, and all subsequent BOCA versions, which do not require egress windows, except in sleeping rooms, a circumstance not pertinent to the high school.

– 9 –

31.    Thus, the Township has in effect  for use at the High School the 1996 BOCA Code, which has its own chapter on fire safety provisions as part of its requirements.

32.    Nowhere in the building or fire codes adopted by the Township of Upper Chichester is there a requirement for "egress" windows for a public school. In fact, other public schools in Upper Chichester do not have and were never required to have egress windows.

33.    Through this renovation process until the filing of this Complaint, no one from Upper Chichester Township has ever provided a specification, description or any support for these new "egress" window requirements.

34.    The Architect for the Chichester School District renovation project is Brian W. Ambruster, AIA, of Bonnett & Associates located in Eddystone, Delaware County, Pennsylvania. Brian W. Ambruster has and continues to design public schools throughout Pennsylvania.

35.    Windows are not required by any code applicable to the Chichester High School nor known to be required in any municipality in the five-county area.

36.    In May of 2001, the District published and let its plans and specifications for purposes of receiving bids pursuant to the Public Bidding Law.

37.    On June 13, 2001, several contractors were awarded various projects involved in the renovation. The glass replacement was awarded to Almond Glass

Works, Inc. as it priced the specifications and plans it had received which only detailed the Ambruster (non-escape) window.

38.    Almond Glass Company has a Township license and building permit issued in August 2001 by the Township of Upper Chichester presumably after the plans were reviewed and approved by the Township and its enforcement officials.

39.    Over the Summer of 2001, Defendant Holland mentioned to some contractors various additional desires, including opening windows for escape purposes to be installed throughout the building. No written notices, no promulgated rules, no proposed regulations, and no express descriptions were give to anyone as of the date of filing hereof.

40.    Thereafter, Defendant Holland verbally stated new directives mandating opening windows for escape through certain floors of the building.

41.    Thereafter, Defendant Holland verbally stated different mandates for opening windows for each of the second story classrooms in some of the wings.

42.    Thereafter, Defendant Holland verbally stated another mandate for opening windows, one in each classroom for a particular wing at the High School.

43.    Defendant Holland spoke with a few people on site and certain people in administration, but not to the Board of School Directors nor did Holland follow with written requirements as to the design or specifications for his proposal(s).

44.    Neither Defendant Holland nor Bostwick has ever given a written specification of the window they contemplate, but have issued a Cease and Desist letter directed at any further window installation.

45.    When pressed on several occasions to reveal the specifications he had in mind, Defendant Holland recently responded that Plaintiff should order a window and he would look at it to see if it were acceptable.

46.    The Ambruster windows had been purchased last fall, delivered to the site months ago and are being installed into the High School as originally planned and approved.

47.    It takes about four (4) months lead time for <u>standard</u> windows (not specially ordered ones) to be engineered, ordered, manufactured for quantity and shipped to the location for installation.

48.    It takes additional prevailing wage rate labor payments to remove old windows and/or install the Holland windows, whatever they might be.

49.    Almond Glass Company's contract is for $930,000.00 as bid. The proposal that the School District accepted in 2001 does not contemplate Holland windows.

50.    On or about June 7, 2002, the School District was copied on a "Cease and Desist" letter from Bostwick and Holland, dated May 31, 2002,  to Almond Glass, mandating that window installation be stopped and the approved windows not be used. A true and correct copy of that Letter is attached as Exhibit "2."

51.     The School District is required by the Public School Code of 1949, 24 P.S. §15-1501, to provide one hundred eighty days of education during its approved, calendar school year. In anticipation of finishing the construction time line as well as all necessary clean up, the School Board approved the District Calendar as the statute requires, to open school for the 2002-2003 school year.

52.     The Construction Manager for the High School renovations is Daniel Bontempo of Granary & Associates located at 411 N. 20th Street, Philadelphia, PA. Mr. Bontempo schedules and implements the various trade activities. and coordinates contractors at the site. Bontempo had scheduled window installation for June 2002, prior to the asbestos contractor which has been delayed by Defendants, but must install windows <u>right</u> <u>now</u> in order that there is the proper time for asbestos removal and completion by the contractors.

53.     The windows should have been completed by June 20, 2002 and have been scheduled to be installed and completed <u>right</u> <u>now</u>. Without progress of the window installation, the other systems cannot properly proceed.

54.     Any delay in the window installation will cause the High School renovation project to stop, and the school will not open on time.

55.     Additionally, the School District has been placed on notice that it will receive claims for delay damages and extra costs in the event construction is held up and/or changed for the new requests.

56.     The School District is restricted to a limited budget for the renovation project, based on the proceeds of a bond issue.

57.     The Cease and Desist letter has been appealed to and is pending pursuant to the procedure set forth in the BOCA Code, Section 121.1.

58.     Since May 2002, each of the District facilities and schools have received letters from Defendant Holland demanding changes.

59.     On the morning following the public vote to authorize the suit, thirty-eight (38) of the installed Ambruster windows at the high school were each smashed with a hammer.

60.     On June 20, 2002, William Tracey a school board member, head of the Buildings and Grounds Committee and owner of certain properties in the District received a letter from Defendant Remaley demanding inspections of those properties without cause or reason.

**Count I**
**Chichester School District v. Defendants**
**42 U.S.C. § 1983**
**Due Process Violation of Fourteenth Amendment of U.S. Constitution**

61.     Plaintiff incorporates the above averments by reference as if set forth at length herein.

62.     Defendant UCT is a person, within the meaning of 42 U.S.C. § 1983, acting under color of Pennsylvania state law and supposed to be acting under the Municipal Planning Code, 53 P.S. § 101 et seq. ("MPC")

63. Defendants Beth Zenuck, Joseph DeMarco, Russell Minner, Thomas Ferro and James Stuart are persons within the meaning of 42 U.S.C. §1983, acting under color of Pennsylvania state law as commissioners of the UCT.

64. Defendants Holland, Bostwick and Remaley in their capacities as appointed inspectors with UCT are persons, within the meaning of 42 U.S.C. § 1983, acting under color of Pennsylvania state law.

65. Defendants acted deliberately together and/or individually in demanding that the School District install egress windows in rescission and complete overhaul of the Township adopted ordinances and permits already issued thereunder.

66. Defendants' issuing other threatening letters to the District and school board members were meant to harass, retaliate and further deprive Plaintiff of its constitutional rights.

67. The due process clause of the Fourteenth Amendment of the United States Constitution protects property rights against arbitrary and/or irrational government action.

68. Defendants' actions, collectively and individually, in demanding egress windows and follow-up attempts to intimidate, constitute arbitrary and irrational government action because the officially adopted local and state regulations do not require such windows, the School District was approved with non-egress windows by both L&I and UCT, the School District did not receive proper notice of the

– 15 –

Defendants' demand, and compliance would impose irreparable harm and a substantial hardship on the School District and CHS students.

69. The actions of Holland and Bostwick, in revoking a building permit that had already been issued and approved, on the basis of a rule that does not appear in any applicable law, regulation, ordinance, or building code, constitutes arbitrary and irrational action.

70. As set forth above, the School District's proposed renovations to Chichester High School were in full compliance with the 1996 BOCA Building Code, the code UCT adopted as all state mandates.

71. On August 2, 2001, UCT issued a building permit to the School District's window contractor, Almond Glass Works.

72. The only qualification to the permit was that the building must conform to the 1996 BOCA Code and, in fact, the proposed renovations to CHS comply with this code.

73. L&I issued a certificate of occupancy on August 24, 2001. This was followed by a field inspection on September 6, 2001, all reflecting fire safety and building approvals

74. L & I never questioned the windows proposed in the submitted plans for the window renovations.

75.    UCT also did not question the proposed windows at the time that the School District submitted its building plan and permit application, subsequently approved.

76.    At no time during the period that the School District sought plan approval for its proposed renovations to Chichester High School did any of the Defendants notify the School District that the proposed windows submitted in the plans were objectionable.

77.    After the building permit was issued, the School District relied on same when it directed installation of non-egress windows.

78.    Defendants' actions in changing the rules midstream, *after* the School District had already relied to its detriment, and in effectively revoking a building permit that was previously issued because of a requirement that is *not* based on any applicable building code standard, regulation, law or ordinance, constitutes arbitrary and irrational government action, in violation of the due process guarantee of the Fourteenth Amendment of the U.S. Constitution.

79.    Defendants' arbitrary and irrational action has a severe, adverse impact on the School District's property rights in CHS, in violation of the Constitution and 42 U.S.C. § 1983.

80.    As a result of Defendants' violations, the School District is suffering irreparable harm because compliance with the Defendants' demand for egress

windows will delay the start of the school year for Chichester High School, which is currently scheduled to open in September 2002.

81.     The School District is required by Section 1501 of the Pennsylvania Public School Code of 1949, 24 P.S. § 15-1501, to keep its schools open for at least one-hundred and eighty days each year.

82.     A substantial delay in the opening of Chichester High School to accommodate Defendants' unreasonable demands would constitute irreparable harm because the School District would be unable to comply with the requirements of the Public School Code of 1949.

83.     The egress windows are not the best design choice as they do not protect against intrusion, horseplay and/or vandalism.

84.     After consulting with its construction contractors, the School District has been advised that it will be impossible to accede to Defendants' demands and still open on time.

85.     The School District has suffered injury and damages including, but not limited to, being forced to install windows it does not agree are wise or necessary, the additional costs of installing the egress windows demanded by the Defendants, the delay damages that will be incurred because the construction renovation project will be delayed, and costs over-runs to the contractors hired to perform the renovations.

WHEREFORE, Plaintiff, Chichester School District, demands judgment in its favor and the following relief:

a.    a temporary restraining order and an injunction restraining Defendants from compelling the School District to install egress windows at the Chichester High School;

b.    compensatory damages;

c.    prevailing party attorney's fees under 42 U.S.C. § 1983; and

d.    such other relief at the Court may deem just and appropriate.

### Count II
### Chichester School District v. All Defendants
### 42 U.S.C. 1983–Deprivation of Property Interest
### <u>In violation of the Fourteenth Amendment of the U.S. Constitution</u>

86.    Plaintiff incorporates the above averments by reference as if set forth at length herein.

87.    The School District owns the land upon which the Chichester High School is erected as well as the building itself.

88.    As the owner of the land and real property, the School District is entitled to the protections under the Fourteenth Amendment of the U.S. Constitution, guaranteeing against deprivation of property without due process of law.

89.    At issue in this action is the School District's fundamental property interest in the ownership and use of the land and the building for high school education.

90.    Defendants' actions, as set forth above, in approving the School District's plans to conduct renovations at the Chichester High School, including the replacement of windows with Ambruster windows, and then arbitrarily and

irrationally stating, through Defendants Holland, Bostwick and Zenuck, that egress windows must be utilized or the building would be shut down, constitutes an infringement of the School District's fundamental property rights without due process of law.

91.    The School District and its contractors are in compliance with all applicable building codes and regulations pertaining to the High School.

92.    The School District and its contractors obtained building permits and certificates of occupancy from all applicable local and state agencies.

93.    The School District and its contractors relied upon the building codes and regulations and the approvals obtained from the local and state agencies when they proceeded to install the windows that were listed in its proposed renovations to the CHS.

94.    None of the Defendants ever notified the School District, prior to the installation of the windows, that a specific type of alternative window was required.

95.    To the contrary, the School District first learned of UCT action after Plaintiff had already contracted to install the Ambruster windows.

96.    Defendants' demand that the School District install the egress windows at this juncture is a substantial interference and deprivation of Plaintiff's property rights, in violation of the Fourteenth Amendment of the U.S. Constitution.

97.    Further, as set forth above, compliance at this point would interfere with the School District's ability to educate students and satisfy the requirements of the School Code of 1949.

98.    Compliance with Defendants' new demands would prevent CHS from opening in September because the windows that the Defendants are demanding are special order, and by the time the order is drawn, placed and windows received, installed, and then approved, the deadline for opening the High School will already have passed.

99.    Additionally, the School District would incur substantial expense in attempting to install the windows that Defendants are now demanding and would involve risk of intruders.

100.    Further, compliance with the Defendants' new demand for egress windows would result in delays in completion of the project, for which the School District would be responsible for delay damages to its contractors.

WHEREFORE, Plaintiff, Chichester School District, prays for the following relief:

a.    a temporary restraining order and an injunction restraining Defendants from compelling the School District to install egress windows on the upper floors of the Chichester High School;

b.    compensatory damages;

c.    prevailing party attorney's fees under 42 U.S.C. § 1983; and

d.    such other relief at the Court may deem just and appropriate.

**Count III**
**Plaintiff v. Upper Chichester Township**
**Improper Delegation of Rule Making Authority**

101.    Plaintiff incorporates the above averments by reference as if set forth in full herein.

102.    The MPC is the enabling statute that empowers townships like UCT to regulate the construction of buildings through the enactment of ordinances and the adoption of building codes.

103.    Pursuant to §4101 of the MPC, 53 P.S. § 4101, townships are empowered to adopt ordinances setting forth buildings standards and adopting standard building codes like BOCA.

104.    As set forth above, UCT adopted the 1993 BOCA building code with amendments, which would have in force the the 1996 BOCA code.

105.    No BOCA code requires egress windows, as Defendants mandate.

106.    When the School District protested to UCT that Holland and Bostwick were requiring a standard that does not appear in BOCA, state law, or UCT's ordinances, Zenuck, acting on behalf of the UCT Board of Commissioners, supported Holland and Bostwick.

107.    Zenuck's express ratification, along with that of the remaining Defendant Commissioners, of Holland's and Bostwick's actions in demanding a building standard not required by UCT ordinance or the BOCA building code adopted by UCT, constitutes improper delegation because the MPC does not authorize a

township to adopt and promulgate one standard for buildings, while its enforcement officers arbitrarily pick another, completely different standard.

108.    The actions of Holland, Bostwick, the Defendant Commissioners and UCT contravene the MPC and are therefore prohibited.

WHEREFORE, Plaintiff, Chichester School District, prays for the following relief:

a.    an injunction restraining Defendants from compelling the School District to install egress windows on the upper floors of the Chichester High School;

b.    a determination that Holland's and Bostwick's demand for the installation of egress windows in Chichester High School is prohibited because it contravenes the MPC; and

c.    such other relief at the Court may deem just and appropriate

**Count IV**
**Chichester School District v. Upper Chichester Township**
**and Beth Zenuck**

109.    Plaintiff incorporates the above averments by reference as if set forth at length herein.

110.    Defendants Ferro, DeMarco, Minner, Stuart and Zenuck are commissioners of UCT. As such, Defendants had the duty to appoint members to a Board of Appeals for persons aggrieved by the decision of a Code Official. according to the BOCA Code at Section 121.0, but no such appeal board exists.

111.    Plaintiffs and Almond appealed the Cease and Desist letter, but without an Appeal Board and stay of the letter, the Plaintiff and Almond will be and are being deprived of due process of law.

112.    The named individual Commissioners had the duty to guard against and provide the means to protect against Plaintiff's loss through an Appeal Board, but did not in further violation of the Constitution and 42 U.S.C. § 1983.

WHEREFORE, Plaintiff, Chichester School District, prays for the following relief:

a.    a temporary restraining order and an injunction restraining Defendants from compelling the School District to install egress windows on the upper floors of the Chichester High School;

b.    compensatory damages;

c.    prevailing party attorney's fees under 42 U.S.C. § 1983; and

d.    such other relief at the Court may deem just and appropriate.

## Chichester School District v. All Defendants

113.    Plaintiff incorporates the above averments by reference as if set forth in full herein.

114.    Since the Plaintiff determined it is impossible to meet the vague and specious demands of the Township Defendants, Plaintiff has received threatening letters from Township enforcement officials concerning its other properties and school board members have begun to receive such letters about their own personally held properties.

– 24 –

115.    The District has also suffered damage to thirty-eight (38) already installed Ambruster windows on or about June 19, 2002, the day after this suit was authorized by public vote at a regularly scheduled school board meeting.

116.    It is believed that the above actions are intended to interfere further with Plaintiff's property and due process rights, in violation of law and Section 1983, causing damage and loss to Plaintiff.

WHEREFORE, Plaintiff, Chichester School District, prays for the following relief:

a.    a temporary restraining order and an injunction restraining Defendants from compelling the School District to install egress windows on the upper floors of the Chichester High School;

b.    compensatory damages;

c.    prevailing party attorney's fees under 42 U.S.C. § 1983; and

d.    such other relief at the Court may deem just and appropriate.

_____
Terry E. Silva
Kenneth J. Benton
Silva & Associates
1429 Walnut Street, Suite 900
Philadelphia, PA 19102
(215) 564-0202

Dated: June 21, 2002