**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHICHESTER SCHOOL DISTRICT** | § | **Civil Action** |
| *Plaintiff,* | § | |
| | § | **No. 02-CV-4015** |
| | § | |
| vs. | § | |
| | § | |
| **UPPER CHICHESTER TOWNSHIP,** | § | |
| **BETH H. ZENUCK, THOMAS E. FERRO, RUSSELL** | § | |
| **B. MINNER, JAMES R. STUART, JOSEPH A.** | § | |
| **DEMARCO,** in their individual and official | § | |
| capacity as Commissioners of Upper | § | |
| Chichester Township, | § | |
| **DAVID L. HOLLAND,** in his individual and | § | |
| official capacity as Fire Marshal of | § | |
| Upper Chichester Township, and | § | |
| **MARK A. BOSTWICK,** in his individual and | § | |
| official capacity as Building Inspector of | § | |
| Upper Chichester Township, and **CHARLES** | § | |
| **REMALEY**, Inspector, | § | |
| *Defendants.* | § | |

## O R D E R

AND NOW, this day of _____ 2002, upon consideration of Plaintiff

Chichester School District's motion for a temporary restraining order, its brief in

support, and its exhibits, and the opposition thereto, it is hereby **ORDERED** that

the motion is **GRANTED** Defendants, their agents and assigns are hereby

**ENJOINED** from enforcing the May 31, 2002 "CEASE AND DESIST" letter issued

by Defendants David L. Holland and Mark A. Bostwick against Almond Glass Co.

and in otherwise attempting to require that Chichester School District use so-called

"egress" windows in performing the renovation of Chichester High School.

As required by Fed. R. Civ. P.  65(d), the reason for issuing the TRO is that Chichester School District will suffer irreparable harm if Defendants are not enjoined from enforcing the May 31, 2002 "cease and desist" letter because that letter would prevent the School District from completing its renovation project of Chichester High School according to schedule and result in a substantial delay in the opening of the school currently planned for September 2002, so that the schedule for the high school would violate the requirements of Section 1501 of the Public School Code of 1949, 24 P.S. §15-1501, to provide one hundred and eighty days of instruction during its approved, calendar school year. This would constitute irreparable harm. Cf. 24 P.S. § 11-1161-A (authorizing issuance of injunction when strike by employees would cause school district to violate Section 1501).

By the Court:

_____
The Honorable Louis J. Pollak
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHICHESTER SCHOOL DISTRICT<br>*Plaintiff,*<br><br>vs.<br><br>UPPER CHICHESTER TOWNSHIP,<br>BETH H. ZENUCK, THOMAS E. FERRO, RUSSELL B. MINNER, JAMES R. STUART, JOSEPH A. DEMARCO, in their individual and official capacity as Commissioners of Upper Chichester Township,<br>DAVID L. HOLLAND, in his individual and official capacity as Fire Marshal of Upper Chichester Township, and MARK A. BOSTWICK, in his individual and official capacity as Building Inspector of Upper Chichester Township, and CHARLES REMALEY, Inspector,<br><br>*Defendants.* | § § § § § § § § § § § § § § § § § § § § § § | Civil Action<br><br>No. 02-CV-4015 |

## O R D E R

AND NOW, this day of _____ 2002, upon consideration of Plaintiff Chichester School District's motion for a temporary restraining order, its brief in support, and its exhibits, it is hereby **ORDERED** that the motion is **GRANTED *ex parte*** for a period of ten days. Defendants, their agents and assigns are hereby **ENJOINED** from enforcing the May 31, 2002 "CEASE AND DESIST" letter issued by Defendants David L. Holland and Mark A. Bostwick against Almond Glass Co. and in otherwise attempting to require that Chichester School District use so-called "egress" windows in performing the renovation of Chichester High School.

As required by Fed. R. Civ. P. 65(d), the reason for issuing the TRO is that Chichester School District will suffer irreparable harm if Defendants are not enjoined from enforcing the May 31, 2002 "cease and desist" letter because that letter would prevent the School District from completing its renovation project of Chichester High School according to schedule and result in a substantial delay in the opening of the school currently planned for September 2002, so that the schedule for the high school would violate the requirements of Section 1501 of the Public School Code of 1949, 24 P.S. §15-1501, to provide one hundred and eighty days of instruction during its approved, calendar school year. This would constitute irreparable harm. See 24 P.S. § 11-1161-A (authorizing issuance of injunction when strike by employees would cause school district to violate Section 1501).

By the Court:

_____
The Honorable Louis J. Pollak
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHICHESTER SCHOOL DISTRICT | § | **Civil Action** |
| *Plaintiff,* | § | |
| | § | **No. 02-4015** |
| vs. | § | |
| | § | |
| | § | |
| UPPER CHICHESTER TOWNSHIP, | § | |
| BETH H. ZENUCK, THOMAS E. FERRO, RUSSELL B. | § | |
| MINNER, JAMES R. STUART, JOSEPH A. | § | |
| DEMARCO, in their individual and official | § | |
| capacity as Commissioners of Upper | § | |
| Chichester Township, | § | |
| DAVID L. HOLLAND, in his individual and | § | |
| official capacity as Fire Marshal of | § | |
| Upper Chichester Township, and | § | |
| MARK A. BOSTWICK, in his individual and | § | |
| official capacity as Building Inspector of | § | |
| Upper Chichester Township, and CHARLES | § | |
| REMALEY, Inspector, | § | |
| *Defendants.* | § | |

MOTION OF PLAINTIFF CHICHESTER SCHOOL DISTRICT
FOR A TEMPORARY RESTRAINING ORDER

Pursuant to Fed. R. Civ. P. 65(b), Plaintiff, Chichester School District ("the School District") respectfully moves this Court for a temporary restraining order enjoining Defendants Upper Chichester Township("UCT"), Board of Commissioners of Upper Chichester Township ("the BOCUCT"), Beth H. Zenuck, Thomas E. Ferro, Russell B. Minner, James R. Stuart, Joseph A. DeMarco, in their individual and official capacities as Commissioners of Upper Chichester Township, David L. Holland, in his individual and official capacity as fire marshal of Upper Chichester Township ("Holland"), Mark A. Bostwick, in his individual and official capacity official capacity as Building Inspector ("Bostwick"), and Charles Remaley, in his individual and official

capacity as Inspector of Upper Chichester Township, from compelling enforcement of the Cease and Desist Notice of Defendants and otherwise mandating the School District install egress windows in Chichester High School ("CHS") in connection with a renovation project of the school. In support of the motion, the School District avers as follows:

1.      This is a federal question action arising under 42 U.S.C. § 1983 with supplemental jurisdiction for claims under Pennsylvania law.

2.      The School District is a Pennsylvania School District of the Third Class, organized, existing, and operating under the laws of the Commonwealth of Pennsylvania and the Pennsylvania School Code.

3.      CHS is located in Upper Chichester Township, Delaware County, Pennsylvania. Plaintiff owns and is renovating CHS.

4.      Defendants, acting under color of state law, are interfering with the School District's constitutionally protected property rights in CHS in Delaware County, Pennsylvania in connection with the School District's renovation plan of CHS.

5.      As part of its facilities, the Plaintiff owns and maintains CHS, which began an extensive, multi-million dollar renovation in the Spring of 2001.

6.      The high school construction/renovation has been taking place over the course of the Spring and Summer of 2001 and 2002 as well as during the school year after school hours, as necessary, and is scheduled to be complete by September 2002.

7.      Pennsylvania law required that the School District submit and obtain approval of the specifications for the renovation by the Commonwealth of Pennsylvania and the Department of Education ("PDE") as well as Labor & Industry.

8.      Prior to publicizing the renovation plans for bid in March—May 2001, the School District obtained approval of the plans from PDE, the Commonwealth Department of Labor & Industry ("L&I"), and defendant UCT.

9.      Between 1998 and 2000, the School District proceeded through the Plan Con design and building process as established and required by PDE, L&I and pertinent local and Commonwealth regulatory agencies.

10.     Prior to bid publication, the High School plans were submitted to the Township and approved by various code officials and inspectors on or before May 2001 and affirmed by issuance of Township building permits in August 2001.

11.     The parameters to the project include replacement and/or installation of various essential systems including asbestos abatement, electrical improvements, fire systems, plumbing replacement, disability revisions, revised HVAC installation, as well as appearance improvements and additions.

12.     Window replacement is one of the many items scheduled to complete, right now. The window replacement contract valued at $930,000.00 was approved June 13, 2001 and notice issued June 14, 2002.

13.     CHS was designed and built in approximately 1967. As constructed, it is a combination of one (1) to three (3) floors with several wings of classrooms and

associated student use areas. A diagram is attached as Exhibit "3" to the original Complaint.

14.     The original design of the school, like most schools designed in that era, used slider windows in tracks on the exterior of the building in most of the classrooms. Slider windows were used for style, not egress.

15.     For the renovation, the District's Architect, Brian W. Ambruster, AIA, chose standard "hopper-type" windows, common to most Pennsylvania schools ("the Ambruster window").

16.     The Ambruster window is approximately four feet high and four feet one and a half inches wide, with a horizontal break approximately 24" from the base and hinged at the base. The moveable window area is 22 1/4 inches by 4 feet.

17.     The lower hinged area forms an opening for movement inward, but different in dimensions from that now being demanded by Defendants.

18.     The Ambruster window is designed to open for air but without necessarily allowing physical intrusion. The glass itself is breakable with about one hundred (100) pounds of pressure in an emergency, i.e., a fire axe.

19.     In or around March 2001, School District officials and their representatives met with Township officials to discuss the building plans and drawings that were to be sent out for public bid.

20.     During the meeting, a Township official mentioned that he wanted the new windows for the High School to open the same way as do the sliding windows originally installed.

– 4 –

21.    Representatives of the District, the Architect and Engineer specializing in school construction and responsible for this project as well as other code officials for the Township itself responded that egress windows are not required under Township mandates, under the BOCA code as adopted, or under any state or national code. See Affidavits of:  Brian W. Ambruster, AIA, attached hereto as Exhibit "A", Construction Manager Daniel Bontempo, attached hereto as Exhibit "B", Superintendent Edwin D. Meyer, Ed.D., attached hereto as Exhibit "C", Joseph J. Driscoll, Director of Business Affairs, attached hereto as Exhibit "D", and William R. Tracey, School Board Director, Head of Buildings and Grounds Committee, attached hereto as Exhibit "E."

22.    Upper Chichester Township enacted and approved the BOCA Code, 1993 edition, and all subsequent BOCA versions (which would be 1996), none of which requires egress windows, except in sleeping rooms, a circumstance not pertinent to the high school.

23.    Thus, the 1996 BOCA Code, which has its own chapter on fire safety provisions as part of its requirements, applies and governs the School District's renovation project of CHS. See BOCA letter attached as Exhibit "F."

24.    Neither BOCA nor the fire code adopted by the Township requires "egress" windows for a public school. Indeed, other public schools in Upper Chichester do not have and were never required to have egress windows.

25.    Windows are not required by any code applicable to the Chichester High School nor known to be required in any municipality in the five-county area.

26.    The Chichester High School classrooms are not used for sleeping rooms or

– 5 –

any other purpose for which egress windows would be necessary.

27.    Through this renovation process until the filing of this Complaint, no one from Upper Chichester Township has ever provided a specification, description or any support for these new "egress" window requirements.

28.    The Architect for the Chichester School District renovation project is Brian W. Ambruster, AIA, of Bonnett & Associates located in Eddystone, Delaware County, Pennsylvania. Ambruster has and continues to design public schools throughout Pennsylvania.

29.    In May of 2001, the District published its plans and specifications for purposes of receiving bids pursuant to the Public Bidding Law.

30.    On June 13, 2001, several contractors were awarded various projects involved in the renovation.

31.    The glass replacement was awarded to Almond Glass Company ("Almond") using the Ambruster (non-egress) window.

32.    The Township issued a license and building permit to Almond in August 2001, presumably after its plans were reviewed and approved by the Township and its enforcement officials. A copy of the building permits are attached hereto as Exhibit "G."

33.    Over the Summer of 2001, Defendant Holland mentioned to some contractors various additional desires, including opening windows for escape purposes to be installed throughout the building.

34.    No written notices, no promulgated rules, no proposed regulations, and no express descriptions were given to anyone as of the date of filing hereof.

35.    Thereafter, Holland verbally stated new directives mandating opening windows for escape through certain floors of the building.

36.    Thereafter, Defendant Holland verbally stated different mandates for opening windows for each of the second story classrooms in some of the wings.

37.    Thereafter, Defendant Holland verbally stated still another mandate for opening windows, one in each classroom for a particular wing at the High School.

38.    Neither Defendant Holland nor Bostwick has ever given a written specification of the window they contemplate, but have issued a Cease and Desist letter directed at any further window installation.

39.    When pressed on several occasions to reveal the specifications for the egress window he contemplated, Defendant Holland recently responded that Plaintiff should order a window and he would review it to see if it were acceptable.

40.    The Ambruster windows had been purchased last fall, delivered to the site months ago and are being installed into the High School as originally planned and approved.

41.    It takes approximately four (4) months lead time for *standard* windows (not specially ordered) to be ordered and shipped to the location for installation.

42.    It takes additional prevailing wage rate labor payments to remove old windows and install the Holland windows.

43.    Almond's contract is for $930,000.00 as bid.

44.    The proposal that the School District accepted in 2001 does not contemplate Holland windows.

– 7 –

**Irreparable Injury**

45.    The School District will suffer irreparable injury unless Defendants are enjoined from requiring that egress windows be installed in the CHS renovation project.

46.    On or about June 7, 2002, the School District was copied on a "Cease and Desist" letter from Bostwick and Holland, dated May 31, 2002, to Almond, mandating that window installation be stopped and the approved windows not be used. A true and correct copy of that Letter is attached hereto, made a part hereof and marked as Exhibit "H."

47.    Almond authorizes Plaintiff's representation in this suit and ultimately will seek recompense from Plaintiff for fees, delays and/or changes.

48.    The School District is required by the Public School Code of 1949, 24 P.S. §15-1501, to provide one hundred eighty days (180) of instruction during its approved, calendar school year. In anticipation of finishing the construction time line as well as all necessary clean up, the School Board approved the District Calendar as the statute requires, to open school for the 2002-2003 school year at September 16, 2002. Any delay not allowing completion by June 30 is a violation of the School Code..

49.    The Construction Manager for the High School renovations is Daniel Bontempo of Granary & Associates located at 411 N. 20th Street, Philadelphia, PA. Mr. Bontempo schedules and implements the various trade activities and coordinates contractors at the site.

50.    Bontempo had scheduled window installation for June 2002, prior to the asbestos abatement contractor, but must install windows right now in order that there is the proper time for asbestos removal.

51.    The windows should have been completed by June 20, 2002 and have been scheduled to be installed and completed *right now*. Without progress of the window installation, the remaining contractors cannot properly install the other systems at the facility.

52.    Any delay in the window installation will cause the High School renovation project to stop, and the school will not open on time.

53.    Additionally, the School District has been placed on notice that it will receive claims for delay damages and extra costs in the event construction is held up and/or changed for the new requests.

54.    The School District is restricted to a limited budget for the renovation project, based on the proceeds of a bond issue.

55.    The "Cease and Desist" letter has been appealed to and is pending before the Township Solicitor pursuant to the procedure set forth in the BOCA Code. The solicitor advises there is no such Board in existence; so no review can take place.

56.    Since May 2002, each of the District facilities and schools have received letters from Defendant Holland demanding changes.

57.    On the morning following the public vote to authorize the suit, thirty-eight (38) of the installed Ambruster windows were each smashed with a hammer.

58.    On June 20, 2002, William Tracey a school board member, head of the

Buildings and Grounds Committee and owner of certain properties in the District received a letter from Defendant Remaley demanding early inspections of those properties. See Exhibit "E."

B.    **Probability of Success of the Merits**

       i.    Substantive Due Process Claim

59.    The School District has claims against Defendants under 42 U.S.C. §1983 and a state law claim under the Municipal Planning Code, 53 P.S. § 101 et seq. ("MPC").

60.    There is a substantial probability that the School District will prevail on its claims.

61.    The §1983 claims include a substantive due process claim with respect to the School District's property interests in CHS, and Defendants' demand that the School District install egress windows in CHS during the renovation.

62.    To establish a §1983 claim for substantive due process violation of a property right, a plaintiff must show that a defendant acted under color of state law in injuring a protected fundamental property interest, and that the defendant's actions were arbitrary, irrational, or motivated by an improper purpose.[1]

63.    A building permit or such authorization for an owned property is a property right to which the due process clause of the Fourteenth Amendment attaches.

---

1.    The procedural due process is an obvious claim, as well. Because it requires actions which would themselves involve delay, it is not pursued for the temporary restraining order.

*Woodwind Estates, Ltd. v. Gretkowski,* 205 F.3d 118, 123 (3d Cir. 2000)(collecting cases).

64.    The egress windows that Defendants demand are *not* required by the 1996 BOCA code adopted by Upper Chichester, nor are such windows required under any local ordinance or rule in UCT. The individual Defendants cannot alone "adopt" other codes, as this would be an abuse of power.

65.    Defendants' demand that the School District install a window standard not required by controlling state or local building codes or ordinances is arbitrary, capricious and irrational behavior because Pennsylvania law is well settled that a "municipality cannot condition approval of a development plan upon the developer meeting a condition not contained in the applicable regulations."*Demutis v. Borough of Phoenixville,* 1990 U.S. Dist. LEXIS 8311, *13-14 (E.D. Pa. 1990)(citations omitted).

66.    In this matter, Defendants approved the building permits of the School District and its window contractor but then subsequently Defendant demanded that egress windows be installed. Defendants then issued (May 31, 2002), a "cease and desist" order unless the egress windows were installed, essentially revoking the prior-issued building permits, on which the School District relied in installing the windows that had been approved, on a basis that does not appear in applicable regulations. This constitutes irrational and arbitrary behavior. *Woodwind,* 205 F.3d at 124.

67.    The School District will thus likely prevail on this claim.

b.    **<u>Procedural Due Process Claim</u>**

– 11 –

68.    The School District also has a procedural due process claim under 42 U.S.C. § 1983.

69.    The Fourteenth Amendment of the U.S. Constitution forbids a state from depriving persons of life, liberty, or property without due process of law.

70.    A procedural due process claim, in the context of an infringement of property rights, examines whether the property interest is protected by the fourteenth amendment; and whether the procedures available provided the plaintiff with "due process of law." *Alvin v. Suzuki,* 227 F.3d 107, 116 (3d Cir. 2000)

71.    As set forth above, building on one's property and a building permit is a property right to which the due process clause of the fourteenth amendment attaches. *Woodwind, supra.*

72.    Pursuant to Section 121 of the BOCA code Defendants adopted, an appeal board and procedure must be established to allow review of a decision by a compliance official.

73.    The Township's ordinance, through which it adopts BOCA, 1996, does not comply with this requirement of BOCA because it fails to provide an appeal procedure or any Board for review of the decision by Defendants Holland and Bostwick.

74.    The School District's solicitor, undersigned counsel, recently contacted the Township's solicitor by telephone to discuss this issue in the context of seeking review of the May 31, 2002 "cease and desist" letter.

75.    The Township's solicitor stated that he would investigate this issue but has found there is no such board nor does he believe Defendants can appoint one.

76.     In the meantime, the School District has not been provided an avenue for review of the actions of Defendants Holland and Bostwick, thus depriving the School District of procedural due process and/or progress of its construction for school opening. This will be addressed in the injunction or as an alternative temporary order ground.

iii     <u>MPC Improper Delegation</u>

77.     The MPC is the enabling statute that empowers townships like UCT to regulate the construction of buildings through the enactment of ordinances and the adoption of building codes.

78.     Pursuant to §4101 of the MPC, 53 P.S. § 4101, townships are empowered to adopt ordinances setting forth buildings standards and adopting standard building codes like BOCA.

79.     As set forth above, UCT adopted the 1993 (and 1996) BOCA building code with amendments.

80.     BOCA, as adopted by UCT, does *not* require egress windows, as Defendants mandate.

81.     When the School District protested to UCT that Holland and Bostwick were requiring a standard that does not appear in BOCA, state law, or UCT's ordinances, Defendant Zenuck, acting on behalf of Defendant UCT Board of Commissioners, supported Holland and Bostwick.

82.     Zenuck's ratification of Holland's and Bostwick's actions in demanding a building standard not required by UCT ordinance or the BOCA building code adopted

by UCT, constitutes improper delegation because the MPC does not authorize a township to adopt and promulgate one standard for buildings, while its enforcement officers arbitrarily pick another, different standard.

83.    A "municipality cannot condition approval of a development plan upon the developer meeting a condition not contained in the applicable regulations." *Demutis,* 1990 U.S. Dist. LEXIS 8311, *13-14 (citations omitted).

84.    The actions of Holland, Bostwick and UCT contravene the MPC and are therefore prohibited.

### C.    <u>No Harm to the Defendants</u>

85.    Besides irreparable injury and likelihood of ultimate success on the merits, a court should also consider, when applicable, the relative harm to the Defendant if an injunction is granted and the public interest.

86.    Defendants will not be harmed if the School District is allowed to renovate CHS in compliance with applicable building codes, regulations and issued permits.

87.    The windows that the School District has chosen to use in the renovation project comply with those codes and regulations.

88.    The windows that Defendants insist that the School District use are not required by those codes and regulations and should not be required as the risk of intrusion they pose is greater than any other advantage, a decision the District is charged with making.

D.    **The Public Interest**

89.    The public interest supports the opening of a public school on time without delay and in compliance with Pennsylvania law.

90.    The public interest does not support wasting a substantial amount of taxpayers' dollars installing windows not required by applicable codes and regulations.

WHEREFORE, Plaintiff Chichester School District prays that the Court enter an order granting a temporary restraining order against Defendants prohibiting them from interfering with the renovation project of Chichester High School in accordance with the building permits that have been issued and prohibiting them from requiring that the School District use egress windows in the school.

Respectfully submitted,

Silva & Associates, P.C.

_____
Terry Elizabeth Silva
Kenneth J. Benton
Suite 900, 1429 Walnut Street
Philadelphia, PA 19102
(215) 564-02020

– 15 –

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHICHESTER SCHOOL DISTRICT** | § | **Civil Action** |
| *Plaintiff,* | § | |
| | § | |
| | § | **No.** 02-4015 |
| | § | |
| vs. | § | |
| | § | |
| | § | |
| **UPPER CHICHESTER TOWNSHIP,** | § | |
| **BETH H. ZENUCK, THOMAS E. FERRO, RUSSELL** | § | |
| **B. MINNER, JAMES R. STUART, JOSEPH A.** | § | |
| **DEMARCO,** in their individual and official | § | |
| capacity as Commissioners of Upper | § | |
| Chichester Township, | § | |
| **DAVID L. HOLLAND,** in his individual and | § | |
| official capacity as Fire Marshal of | § | |
| Upper Chichester Township, and | § | |
| **MARK A. BOSTWICK,** in his individual and | § | |
| official capacity as Building Inspector of | § | |
| Upper Chichester Township, and **CHARLES** | § | |
| **REMALEY,** Inspector, | § | |
| *Defendants.* | § | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF CHICHESTER SCHOOL DISTRICT'S**
**MOTION FOR A TEMPORARY RESTRAINING ORDER**

## I.    Introduction

This is a federal question action arising under 42 U.S.C. § 1983, with

supplemental jurisdiction claims under state law. The gravamen of the action is that

Defendants, acting under color of state law on behalf of the Upper Chichester Township

("UCT"), Delaware County, Pennsylvania, are interfering with and depriving Plaintiff,

Chichester School District ("the School District" or "Chichester"), of its constitutionally

protected property rights in the improvement and use of the Chichester High School

("CHS") in Delaware County, Pennsylvania. Chichester recently undertook a

substantial renovation project at CHS. As required by Pennsylvania law and local ordinances in Upper Chichester Township, the School District through the contractors obtained building permits from Upper Chichester Township for the proposed renovations and obtained approvals of its plans from the Pennsylvania Department of Labor and Industry ("L&I") and the Pennsylvania Department of Education ("PDE") as well as Township officials. Notwithstanding prior approval from state and UCT officials, Defendant Holland, the fire marshal of UCT, notified the School District that the windows Chichester is using in the renovation are unacceptable and that egress windows must be used. Applicable building codes and regulations do not require egress windows. Holland has issued a "cease and desist" order to the School District's window contractor, Almond Glass Company. As a result, the timetable for the renovation project is being severely impacted.

Under the original plans, CHS was scheduled to open in September 2002. As a result of Holland's "cease and desist" letter, the School District will be unable to open the school on time in September. This will cause CHS to violate the state mandate that schools be open at least 180 instructional days per year. The School District is therefore seeking a temporary restraining order enjoining Defendants from interfering with the renovation project and allow CHS to open on time in September.

B.    **Facts**

The School District initiated the construction/renovation of CHS over the course of the Spring and Summer of 2001 and 2002 as well as after school hours during the

school year. As required by Pennsylvania law, the School District submitted and obtained approval of the specifications for the renovation by the Commonwealth of Pennsylvania, the Department of Education ("PDE") and the Commonwealth Department of Labor & Industry ("L&I"). The High School plans were submitted to the Township and approved by various code officials and inspectors on or before May 2001 and affirmed by issuance of building permits in August 2001.  UCT's Building permit is attached to Plaintiff's Complaint as Exhibit "1." The parameters to the project include replacement and/or installation of various essential systems including asbestos abatement, electrical improvements, fire systems, plumbing replacement, disability revisions, HVAC installation, as well as appearance improvements and additions. Window replacement is one of the many items being replaced.

CHS was designed and built in approximately 1967. As constructed, it is a combination of one (1) to three (3) floors with several wings of classrooms and associated student use areas. The original design of the school, like most schools designed in that era,  used slider windows in tracks on the exterior of the building in most of the classrooms. For the 2001 renovation, the District's Architect, Brian Ambruster, chose standard "hopper-type" windows, common to most Pennsylvania schools ("the Ambruster window").[2] The Ambruster window is approximately four feet

---

2.    IT SHOULD BE NOTED: Even if Upper Chichester had adopted NFPA, Life Safety Code, 1997, normally applicable only to hospitals, nursing homes, or like institutions, Exception 4 of Section 11-2.11.1 to the provision reads: "Awning or hopper-type windows that are hinged or subdivided to provide a clear opening not less than 600 sq. in. (3900 sq cm) in area nor any dimension less than 22 in. (55.9 cm) shall be permitted to continue to be used. Screen walls or devices in front of required windows shall not interfere with normal rescue requirements." Chichester High School

high and four feet one and a half inches wide, with a horizontal break approximately 24"

from the base and hinged at the base. The lower hinged area forms an opening for

movement inward compliant with Exception 4 (as noted below) but different in

dimensions from that now being demanded by Defendants under the NFPA <u>never</u>

<u>adopted</u>.

In or around March 2001, School District officials and their representatives met

with Township official s to discuss the building plans and drawings that were to be sent

out for public bid. During the meeting, a Township official mentioned that he wanted

the new windows for the High School to open as do the sliding windows originally

installed. Representatives of the District, the Architect and Engineer specializing in

school construction responsible for this project as well as other code officials for the

Township responded that egress windows are not required under Township mandates,

under the BOCA building code it adopted, or under any state or national code.

UCT enacted and approved the BOCA code, 1993 edition, and all subsequent

BOCA versions, <u>none of</u> <u>which</u> <u>to</u> <u>this</u> <u>2000</u> <u>version</u> <u>require</u> <u>egress</u> <u>windows</u>, except in

sleeping rooms, a circumstance not pertinent to the high school.

Thus, the 1996 BOCA Code, which has its own chapter on fire safety provisions

as part of its requirements, applies and governs the School District's renovation project

of CHS.

Neither BOCA nor the fire code adopted by the Township requires "egress" windows

for a public school. Indeed, other public schools in Upper Chichester do not have and

_____

renovations meet this.

– 4 –

were never required to have egress windows. Windows are not required by any code applicable to the Chichester High School nor known to be required in any municipality in the five-county area. The Chichester High School classrooms are not used for sleeping rooms or any other purpose for which egress windows would be necessary. Through this renovation process until the filing of this Complaint, no one from Upper Chichester Township has ever provided a specification, description or any support for these new "egress" window requirements.

On June 13, 2001, several contractors were awarded various projects involved publicly in the renovation. Almond was awarded the glass replacement using the Ambruster (non-egress) window. The Township issued a license and building permit to Almond in August 2001, presumably after its plans were reviewed and approved by the Township and its enforcement officials. A copy of the license and building permit is attached to the Complaint as Exhibit "1."

Despite approval by L&I and UCT of the School District's renovation project for CHS, Holland later notified the School District that so-called egress windows must be used in the renovation project. Holland also notified Almond that it must "cease and desist" from supplying non-egress windows in the renovation project. A copy of the Holland letter is attached to the Complaint as Exhibit "2."

Holland's demand is substantially interfering with the renovation project, which is on a careful timeline to be completed by September 15, 2002. If Holland is not enjoined from requiring that egress windows be installed, CHS will not open on time

and the School District will be violating the requirement of the Public School Code that school must be opened for 180 instructional days per year.

C.    **Legal Argument**

**The School District is Entitled to a Temporary Restraining Order Enjoining Defendants from Requiring that a Window Standard Be Used in the Renovation Project that is Not Required by Applicable Regulations and/or any Building Codes**.

1.    Standard of Review

The four-pronged test for granting a temporary restraining order under Fed. R. Civ. P. 65 is well-established: The court must consider: (1) the likelihood of success on the merits; (2) the extent to which the plaintiff is being irreparably harmed by the conduct complained of; (3) the extent to which the defendant will suffer irreparable harm if the requested relief is granted; and (4) the public interest. *See Clean Ocean Action v. York,* 57 F.3d 328, 331 (3d Cir. 1995). As discussed below, the School District satisfies this standard, and a temporary restraining order should issue.

a.    **Irreparable Injury**

The School District will suffer irreparable injury unless Defendants are enjoined from requiring that egress windows be installed in the CHS renovation project. The School District is required by Section 1501 of the Public School Code of 1949, 24 P.S. §15-1501, to provide **one hundred and eighty days** of instruction during its approved, calendar school year. In anticipation of finishing the construction time line as well as all necessary clean up, the School Board approved the District Calendar as the statute requires, to open school for the 2002-2003 school year on September 16, 2002. Daniel Bontempo of Granary & Associates is the Construction Manager for CHS

– 6 –

renovations. Mr. Bontempo schedules and implements the various trade activities and coordinates contractors at the site. Bontempo had scheduled window installation for June 2002, prior to the asbestos contractor, but must install windows right now in order that there is the proper time for asbestos removal thereafter. See Bontemnpo affidavit attached hereto as Exhibit "3."

The windows should have been completed before June 14, 20, 2002 and have been scheduled to be installed and completed right now. *Id.* Without progress of the window installation, the remaining contractors cannot properly install the other systems at the facility. *Id.* Any delay in the window installation will cause the renovation project to stop, and the school will not open on time and CHS will be unable to comply with §15-1501.

The importance of complying with Section 1501 is so great that the General Assembly enacted a law specifically authorizing Pennsylvania courts to issue injunctions to stop strikes by employees that threaten the ability of school district to comply with section 1501. *See* 24 P.S. § 11-1161-A ("When an employe organization is on strike for an extended period that would not permit the school entity to provide the period of instruction required by section 1501 by June 30, the Secretary of Education may initiate, in the appropriate county court of common pleas, appropriate injunctive proceedings providing for the required period of instruction"); *see also Carroll v. Ringgold Educ. Ass'n,* 652 A.2d 417, 168 Pa.Cmwlth. 681 (1994)(issuing injunction to stop strike pursuant to Section 1161); *Armstrong Educ. Ass'n v. Armstrong School Dist.,* 116 Pa.Cmwlth. 571, 542 A.2d 1047 (1988), *rev'd on other grounds,* 528 Pa. 170,

595 A.2d 1139 (1991)(same).. Clearly, then, the harm to the school district in not being able to open CHS in time and comply with Section 1501 constitutes irreparable harm.

Additionally, the School District has been placed on notice that it will receive claims for delay damages and extra costs in the event construction is held up and/or changed for the new requests. The School District is restricted to a limited budget for the renovation project, based on the proceeds of a bond issue.

b.  **Likelihood of Success on the Merits**

The School District has claims against Defendants under 42 U.S.C. §1983 and a state law claim under the Municipal Planning Code, 53 P.S. § 101 et seq. ("MPC"). The School District discuses these claims seriatim.

i.  **Substantive Due Process Claim**

The §1983 claims include a substantive due process claim with respect to the School District's property interests in CHS, and Defendants' demand that the School District install egress windows in CHS during the renovation. To establish a §1983 claim for substantive due process violation of a property right, a plaintiff must show that a defendant acted under color of state law in injuring a protected fundamental property interest, and that the Defendants' actions were arbitrary, irrational, or motivated by an improper purpose. *Woodwind Estates, Ltd. v. Gretkowski,* 205 F.3d 118, 123 (3d Cir. 2000)(discussing substantive due process claim under 42 U.S.C. § 1983 in context of township improperly denying zoning permit and holding that a "property interest that falls within the ambit of substantive due process may not be taken away by the state for reasons that are "arbitrary, irrational, or tainted by

– 8 –

improper motive.")

A building permit and activities in _____ of that are property rights to which the due process clause of the Fourteenth Amendment attaches when, as here, a permit must granted under applicable law if the party seeking it complies with applicable regulations for obtaining one. *Woodwind,* 205 F.3d at 123 (collecting cases). The use of property is also protected. *Woodwind* concerned a developer's application for a zoning permit that complied with all applicable zoning regulations and laws. As with a building permit, a zoning permit must be granted if the person seeking it complies with applicable zoning regulations. The developer in Woodwind complied with zoning regulations, but was nonetheless denied a permit. The Third Circuit had to decide whether these facts state a proper substantive due process claim under 42 U.S.C. § 1983. The Court concluded that because approval was required under Pennsylvania law if the developer satisfied the zoning regulations, there was a protected property interest.

Under UCT's ordinance, a building permit must be issued if the applicant's building plans comply with the applicable building code. UCT has adopted the 1993 BOCA, as amended. The School District's plans to renovate CHS comply with BOCA. Indeed, UCT issued a building permit to the School District's Contractor on August 2, 2001. See Exhibit "1" to Complaint. Thus, under *Woodwind,* the School District has a protected property interest with respect to obtaining and using the building permit for the renovation project.

The next issue is whether government official's adverse action with respect to a protected property right is arbitrary, irrational or motivated by an improper purpose. When, as here, the applicant's right to a building permit is established, but government officials have nonetheless denied it, the Court can presume the decision is arbitrary or irrational. See *Demutis v. Borough of Phoenixville,* 1990 U.S. Dist. LEXIS 8311, *13-14. (E.D. Pa. 1990)

As *DeMutis* explained, a municipality like UCT cannot condition approval of a building permit on a requirement not set forth in applicable regulations.

> The cases are myriad that, under Pennsylvania law, a municipality cannot condition approval of a development plan upon the developer meeting a condition not contained in the applicable regulations. *See Stein v. Easttown Twp. Bd. of Supervisors,* 110 Pa. Commw. 293, 304, 532 A.2d 906, 912 (1987) (court will not read into land use ordinances and regulations requirement on developer not found in ordinances and regulations); *Montgomery Twp. v. Franchise Realty Interstate Corp.,* 54 Pa. Commw. 535, 538, 422 A.2d 897, 899 (1980) (municipality may not condition approval of development plan upon developer meeting standard not contained in its regulations); *Goodman v. Board of Comm'rs,* 49 Pa. Commw. 35, 40-42, 411 A.2d 838, 841 (1980) (subdivision plan which complies with applicable regulations must be approved; denial is legally insufficient if not supported by citation to specific provision of law sufficient to justify denial); *Board of Twp. Comm'rs v. Livengood,* 44 Pa. Commw. 336, 338, 403 A.2d 1055, 1056 (1979) ("[I]f any proposed subdivision shown on a submitted plan complies with all applicable laws it is to be approved. If it does not, it is to be rejected."); *Raum v. Board of Supervisors, 29* Pa. Commw. 9, 48, 370 A.2d 777, 798 (1977) ("A township cannot lawfully reject plans unless the plans actually violate a provision of a statute or ordinance.")

*Demutis,* 1990 U.S. Dist. LEXIS 8311, *13-15.

The egress windows that Defendants demand are not required by the 1996 BOCA code adopted by UCT nor are such windows required under any local ordinance

or rule in UCT. Indeed, UCT originally issued a building permit to Almond, the window contractor.

UCT's issuance of a building permit to Almond to install windows in CHS, and then later issuing a "cease and desist letter" saying it cannot used the windows that have already been approved, where the windows demanded in the "cease and desist" letter are not required by applicable regulations, constitutes arbitrary and irrational conduct. *See Demutis v. Borough of Phoenixville,*1990 U.S. Dist. LEXIS 8311, *13-14 (E.D. Pa. 1990)("A municipality cannot condition approval of a development plan upon the developer meeting a condition not contained in the applicable regulations.")(citations omitted). The School District will thus prevail on this claim.

**ii.    Procedural Due Process Claim**

The Fourteenth Amendment of the U.S. Constitution forbids a state from depriving persons of life, liberty, or property without due process of law. A procedural due process claim, in the context of an infringement of property rights claim, examines whether the property interest is protected by the fourteenth amendment; and whether the procedures available provided the plaintiff with "due process of law." *Alvin v. Suzuki,* 227 F.3d 107, 116 (3d Cir. 2000) As set forth above, a building permit is a property right to which the due process clause of the fourteenth amendment attaches. *Woodwind, supra.*

BOCA requires an appeal procedure for review of a decision by a compliance official. However, UCT's ordinance, through which it adopts BOCA, does not comply with this requirement because it fails to provide an appeal board and/or procedure for

review of a decision by Defendants Holland and Bostwick. The School District 's

solicitor, undersigned counsel, recently contacted the Township's solicitor, Howard

Gallagher, Esquire, by telephone to discuss this issue in the context of seeking review

of the May 31, 2002 "cease and desist" letter. The Township's solicitor stated there is

no board and he does not think he could realistically have one appointed.

In the meantime, the School District has not been provided an avenue for

review of the actions of Defendants Holland and Bostwick, thus depriving the School

District of procedural due process. This is a procedural due process violation because

some procedure for review must be provided. *See DeBlasio v. Zoning Bd. of

Adjustment,* 53 F.3d 592, 596 (3d Cir. 1995); *Bello v. Walker,* 840 F.2d 1124 (3d Cir.

1988). The School District will thus prevail on this claim.

### iii.    MPC Improper Delegation Claim

The MPC is the enabling statute that empowers townships like UCT to regulate

the construction of buildings through the enactment of ordinances and the adoption of

building codes. Pursuant to §4101 of the MPC, 53 P.S. § 4101, townships are

empowered to adopt ordinances setting forth buildings standards and adopting

standard building codes like BOCA. UCT adopted the 1993 BOCA building code with

amendments. BOCA, as adopted by UCT, does not require egress windows, as

Defendants mandate.

When the School District protested to UCT that Holland and Bostwick were

requiring a standard that does not appear in BOCA, state law, or UCT's ordinances,

Zennich, acting on behalf of the UCT Board of Commissioners, supported Holland and

Bostwick. Zennich's ratification of Holland's and Bostwick's actions in demanding a

building standard not required by UCT ordinance or the BOCA building code adopted

by UCT, constitutes improper delegation because the MPC does not authorize a

township to adopt and promulgate one standard for buildings, while its enforcement

officers arbitrarily pick another, different standard. See *Demutis,* 1990 U.S. Dist.

LEXIS 8311, *13-14 (citations omitted).The actions of Holland, Bostwick and UCT

contravene the MPC and are therefore prohibited. The School District will thus prevail

on this claim.

      C.    **No Harm to the Defendants**.

      Besides irreparable injury and likelihood of ultimate success on the merits, a

court should also consider, when applicable, the relative harm to the Defendant if an

injunction is granted and the public interest. Defendants will not be harmed if the

School District is allowed to renovate CHS in compliance with applicable building

codes and regulations.

      D.    **The Public Interest.**

      The public interest supports the opening of a public school on time without

delay and in compliance with the requirement of Section 1501 of the Public School

Code of 1949 that a school be open for one hundred and eighty instructional days, 24

P.S. §15-1501. Indeed, this interest is so paramount that the General Assembly

enacted Section 1161-A, 24 Pa. Con. Stat. Ann. § 11-1161-A, to ensure that school

district comply with Section 1501. Further, the School District's hopes that UCT

– 13 –

shares its goal of opening on time in September 2002 and complying with the

requirements of Section 1501.

## Conclusion

For the foregoing reasons, the Court should issue a temporary restraining

enjoining Defendants from requiring that the School District install egress windows in

Chichester High School or otherwise interfering with renovation project.

Respectfully submitted,


_____
Terry Elizabeth Silva
Kenneth J. Benton
Silva & Associates, P.C.
Suite 900, 1429 Walnut Street
Philadelphia, PA 19102
(215) 564-0202

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHICHESTER SCHOOL DISTRICT**<br>*Plaintiff,*<br><br>vs.<br><br>**UPPER CHICHESTER TOWNSHIP,**<br>**BETH H. ZENUCK, THOMAS E. FERRO, RUSSELL**<br>**B. MINNER, JAMES R. STUART, JOSEPH A.**<br>**DEMARCO,** in their individual and official<br>capacity as Commissioners of Upper<br>Chichester Township,<br>**DAVID L. HOLLAND,** in his individual and<br>official capacity as Fire Marshal of<br>Upper Chichester Township, and<br>**MARK A. BOSTWICK,** in his individual and<br>official capacity as Building Inspector of<br>Upper Chichester Township, and **CHARLES**<br>**REMALEY**, Inspector,<br><br>*Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **Civil Action**<br><br>**No.** 02-4015 |

## Certificate of Service

I, Kenneth J. Benton, hereby certify that a copy of the foregoing motion for temporary restraining order and brief in support were served this date on the following person by fax and regular United States mail postage pre-paid at the following address:

Howard J. Gallagher, III, Esquire
Gallagher & Gallagher
18 E. Second Street
P.O. Box 348
Media, PA 19063
**610-566-7910 fax**

_____
Kenneth J. Benton
Silva & Associates
1429 Walnut Street, Suite 900
Philadelphia, PA 19102
(215) 564-0202

Dated:  June 25, 2002